UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| JERRY STOCKDALL, et al., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 4:14CV01557 ERW |
| | ) | |
| TG INVESTMENTS, INC., et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

This matter comes before the Court on Defendant Tina K. Shipman's Motion for Summary Judgment on Counts I and II of the Amended Complaint [ECF No. 35] and Plaintiffs' Motion for Partial Summary Judgment [ECF No. 41].

**I.      FACTUAL BACKGROUND**

This lawsuit originated when Plaintiffs Jerry Stockdall and Cristina Stockdall ("Plaintiffs") filed a complaint against Defendants TG Investments, Inc., Tina Shipman, and George Shipman ("Defendants") alleging violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq*, and the Missouri Minimum Wage Law ("MMWL"), Mo. Rev. Stat. § 290.500 *et seq*, and asserting tort claims of slander/defamation, and conversion.  On October 20, 2014, Defendant TG Investments, Inc. ("TGI") filed a Counterclaim against Plaintiffs asserting claims of conversion and damage to property and business.  On November 4, 2014, Plaintiffs filed an Amended Complaint asserting the same counts as the original complaint and adding a count against Defendants for FLSA retaliation.  Defendants filed an amended counterclaim

1

against Plaintiffs on November 20, 2014, asserting claims of conversion, unjust enrichment and restitution, negligence, and tortious interference.

Defendant Tina Shipman filed the instant Motion for Summary Judgment on Counts I and II of the Amended Complaint claiming she cannot be held liable for any violations of the FLSA because she was not an employer of Plaintiffs [ECF No. 35].  Plaintiffs filed their Motion for Partial Summary Judgment asserting they are entitled to summary judgment on Count I and II of their Amended Complaint because there are no genuine issues of material fact and the Court can determine judgment as a matter of law [ECF No. 41].  Count I of Plaintiffs' Amended Complaint asserts Defendants violated the FLSA and MMWL by failing to pay Ms. Stockdall for work she performed.  Count II of Plaintiffs' Amended Complaint alleges Defendants violated the FLSA and MMWL by failing to pay Mr. Stockdall overtime wages.  The undisputed facts are as follows.

The Chateau Inn and Suites ("Chateau") is a hotel located in Cuba, Missouri.  TGI is a Missouri corporation that operates the Chateau, which is owned by Colonial Corporation.  George Shipman is TGI's president and runs its day-to-day operations.  Tina Shipman is George Shipman's daughter-in-law.  Ms. Shipman did a variety of tasks for Mr. Shipman, similar to that of a personal assistant.  Ms. Shipman had knowledge of the computer system at the Chateau, TGI's operations, and past audits of TGI performed by the Missouri Department of Labor.  Ms. Shipman was paid in amounts ranging from $500-1000.  Ms. Shipman was also designated as a corporate representative of TGI for the purposes of this litigation.  Danna Rodriguez worked for TGI as a hotel manager and manager-trainer at the Chateau.

Approximately four to six individuals work at the Chateau at any time, including managers, housekeepers, laundry personnel, and maintenance workers.  The managers are

sometimes employed as live-in managers who reside at the Chateau while they manage the day-to-day operations of the hotel.  One day per week, a relief manager works to provide a 24-hour break for the live-in managers.  Independent contractors are hired to perform discrete projects at the hotel on an as-needed basis.

Around April 2013, Jerry Stockdall and Cristina Stockdall applied to be managers at the Chateau.[1]  The Stockdalls both attended the interview with Mr. Shipman.  Mr. Stockdall represented himself as being an experienced manager while Ms. Stockdall had no experience in hotel management.  Beginning May 2, 2013, the Stockdalls were hired as "live-in managers" of the Chateau.[2]  Both Mr. and Ms. Stockdall filled out an employee information form for TGI's personnel records.  Mr. Stockdall was paid either $700.00 or eight percent of the hotel's profits, whichever amount was larger, every other week.  The Stockdalls were permitted, along with their minor daughter, to live in two Chateau guest rooms.

Danna Rodriguez trained both of the Stockdalls on how to operate the Chateau and how to be live-in managers.[3]  Mr. Stockdall's duties included performing maintenance, vacuuming, window cleaning, swimming pool maintenance, food preparation, and coordinating with Mr. Shipman to procure independent contractors for maintenance projects.  Ms. Stockdall's duties included payroll administration, inventory management, corresponding with Mr. and Ms. Shipman, supervising employees and terminating employees.[4]  Ms. Stockdall was also

---

[1] Defendants dispute this fact asserting only Jerry Stockdall applied to be a manager.
[2] Defendants dispute this fact asserting only Jerry Stockdall was hired as a manager.
[3] Defendants dispute this fact and refer only to George Shipman's declaration to controvert the fact.  The Court will not consider this fact as in dispute because when a party cites to their own declaration without any other support, the party's self-serving allegations do not create a genuine issue of material fact that precludes summary judgment. *Conolly v. Clark*, 457 F.3d 872, 876 (8th Cir. 2006); *see also Stanbeck v. Best Diversified Prod., Inc.*, 180 F.3d 903, 909 (8th Cir. 1999).
[4] Defendants dispute these facts but again only refer to George Shipman's declaration without any other support; thus, it does not preclude summary judgment.

compensated, approximately $893.00, as an independent contractor for doing laundry and housekeeping work.  Ms. Stockdall was not otherwise paid by TGI.  Additionally, the Stockdalls were responsible for supervising the front desk which included checking guests in and out of the hotel and responding to guest requests and complaints.[5]

The Stockdalls were required to supervise the front desk every hour of the day when there was not another employee being paid to do so.  Mr. Shipman instructed the Stockdalls to take the front desk phone into their room each night so guests could reach someone throughout the night.  A phone was located in the lobby which connected to the front desk phone so if a new guest arrived, a room could be rented.  If current guests needed assistance, the guest's hotel room phone connected to the front desk phone in the Stockdalls' room.  The Stockdalls usually received approximately five calls each night, which they took turns waking up and answering.  Through this arrangement, TGI was not required to hire a night manager.  TGI did not track the hours managers were present or working at the hotel, nor did it have a policy requiring managers to record the hours they worked.  A Chateau employee, Emily Barrett, also believed both Mr. and Ms. Stockdall were managers of the Chateau.

Mr. Shipman visited the Chateau approximately every other week and during those visits he observed Ms. Stockdall tending the front desk.  When Mr. Shipman called the Chateau, Ms. Stockdall was often the person who answered the phone.  Ms. Stockdall regularly corresponded with Ms. Shipman and Mr. Shipman regarding personnel issues and inventory.  Ms. Shipman spoke with the Stockdalls on a daily basis about the operations of the Chateau.  The Stockdalls were required to get Ms. Shipman's permission prior to hiring labor for maintenance projects, ordering inventory, and terminating employees.  Ms. Shipman also instructed the Stockdalls on

---

[5] Defendants dispute this fact asserting only Jerry Stockdall had these job duties.

how to administer payroll, how and when to order inventory, and how to conduct daily housekeeping tasks.  Additionally, Ms. Shipman provided Ms. Stockdall a log-in for the computer system.  In correspondence with third parties, Ms. Stockdall signed her emails as "manager."

On January 3, 2014, Ms. Shipman terminated the Stockdalls' employment.  After this termination, Ms. Shipman filed a police report accusing the Stockdalls of theft and referred to Ms. Stockdall as the manager of the Chateau in the report.  Jerry and Cristina Stockdall were not paid overtime compensation for any hours worked over forty in a workweek.

**II.    STANDARD**

A court shall grant a motion for summary judgment only if the moving party shows "there is no genuine dispute as to any material fact and that the movant is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  By definition, material facts "might affect the outcome of the suit under the governing law," and a genuine dispute of material fact is one "such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  If the non-moving party has failed to "make a showing sufficient to establish the existence of an element essential to that party's case, . . . there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial."  *Celotex*, 477 U.S. at 322-23.

The moving party bears the initial burden of proof in establishing "the non-existence of any genuine issue of fact that is material to a judgment in his favor."  *City of Mt. Pleasant, Iowa v. Associated Elec. Co-op., Inc.*, 838 F.2d 268, 273 (8th Cir. 1988).  The moving party must show that "there is an absence of evidence to support the nonmoving party's case."  *Celotex*, 477

U.S. at 325.  If the moving party meets this initial burden, the non-moving party must then set forth affirmative evidence and specific facts that demonstrate a genuine dispute on that issue. *Anderson*, 477 U.S. at 250.  When the burden shifts, the non-moving party may not rest on the allegations in its pleadings, but, by affidavit and other evidence, must set forth specific facts showing that a genuine dispute of material fact exists.  Fed. R. Civ. P. 56(c)(1); *Stone Motor Co. v. Gen. Motors Corp.*, 293 F.3d 456, 465 (8th Cir. 2002).  To meet its burden and survive summary judgment, the non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  Instead, the non-moving party must demonstrate sufficient favorable evidence that could enable a jury to return a verdict for it.  *Anderson*, 477 U.S. at 249.  "If the non-moving party fails to produce such evidence, summary judgment is proper." *Olson v. Pennzoil Co.*, 943 F.2d 881, 883 (8th Cir. 1991).

In ruling on a motion for summary judgment, the Court may not "weigh the evidence in the summary judgment record, decide credibility questions, or determine the truth of any factual issue." *Kampouris v. St. Louis Symphony Soc.*, 210 F.3d 845, 847 (8th Cir. 2000).  The Court instead "perform[s] only a gatekeeper function of determining whether there is evidence in the summary judgment record generating a genuine issue of material fact for trial on each essential element of a claim." *Id.*  The Court must view the facts and all reasonable inferences in the light most favorable to the nonmoving party.  *Reed v. City of St. Charles*, 561 F.3d 788, 790 (8th Cir. 2009).

### III. DISCUSSION

In Ms. Shipman's Motion for Summary Judgment, she asserts she cannot be held liable for violations of the FLSA and MMWL in regards to Jerry and Cristina Stockdall because she

was not an employer of the Stockdalls. In the Stockdalls' Motion for Partial Summary Judgment, Cristina Stockdall asserts she is entitled to summary judgment for all unpaid time she worked because she was an employee of all defendants, including Ms. Shipman. The Stockdalls also argue they are entitled to summary judgment against all defendants for unpaid overtime and liquidated damages. The Court will address the motions together as the issues are the same.

### A.     Cristina Stockdall's Employment

Cristina Stockdall asserts she is entitled to summary judgment against all defendants for unpaid time she worked as a manager for the Chateau. She claims she was hired to manage the Chateau, she was an employee for all of the defendants, who were all her employers, and Defendants had actual knowledge she was working as a manger. Defendants assert Ms. Stockdall was not hired as a manager, and her only position at the hotel was as an independent contractor for some housekeeping work, for which she was paid.

The FLSA and MMWL require employers to pay employees a minimum wage of $7.25 per hour. 29 U.S.C. § 206(a)(1)(c); Mo. Rev. Stat. § 290.502. A plaintiff pursuing claims under the FLSA, must prove by a preponderance of the evidence she performed work for which she was not properly compensated. *White v. Baptist Mem'l Health Care Corp.*, 699 F.3d 869, 873 (6th Cir. 2012). Pursuant to FLSA regulations promulgated by the United States Department of Labor[6] ("DOL"), work "suffered or permitted," even if not requested by the employer, is work time for which the employee must be compensated if the employer knows or has reason to believe the employee is working. 29 C.F.R. § 785.11; *see also Donovan v. Williams Chem. Co., Inc.*, 682 F.2d 185, 188-89 (8th Cir. 1982).

---

[6] Missouri, in enforcing the MMWL, follows regulations issued by the DOL pertaining to the FLSA. 8 C.S.R. § 30-4.010.

7

Whether Ms. Stockdall was originally hired as a manager with her husband is not relevant to the analysis.  The question at issue is whether Ms. Stockdall performed work as a manager and whether Mr. Shipman and TGI permitted her to do so.[7]  The facts show she was a manager and Mr. Shipman knew she was working as a manager.  Danna Rodriguez stated she trained both the Stockdalls on how to be live-in managers and how to operate the hotel.  Ms. Stockdall supervised the front desk, worked with customers, coordinated personnel for the hotel, spoke to Ms. Shipman and Mr. Shipman about inventory and payroll, and did a host of other duties which went uncompensated.  Ms. Stockdall answered phone calls from customers and guests throughout each night.  During the approximately eight months the Stockdalls lived and worked at the Chateau, Mr. Shipman stated he visited the Chateau approximately every other week, at times observing Ms. Stockdall working.  Additionally, the Stockdalls spoke to Mr. Shipman and Ms. Shipman almost daily about management of the hotel.  Ms. Shipman gave Ms. Stockdall a log-in for the computer system and corresponded with Ms. Stockdall regularly through email about hotel business.  TGI and Mr. Shipman knew Ms. Stockdall was working as a manager at the Chateau.  Any arguments to the contrary are disingenuous and an attempt to circumvent minimum wage laws by getting two workers for the price of one.  Defendants cite no evidence to support their claims beyond their own self-serving statements only Mr. Stockdall was hired as a manager.  Ms. Stockdall was an employee and must be paid as such.

    B.    *The Stockdalls' Employers*

Ms. Shipman asserts she was not an employer of Mr. and Ms. Stockdall because she did not work for Mr. Shipman or TGI but was simply helping as his daughter-in-law when he was

---

[7] The Court will analyze whether Tina Shipman qualifies as an employer *infra*.

sick.  The Stockdalls argue she was their employer because she terminated them and she directed their daily work at the Chateau.

Whether a party is an employer is a question of law for the Court to determine.  *White v. 14051 Manchester Inc.*, 301 F.R.D. 368, 387 (E.D. Mo. 2014).  The existence of an employer-employee relationship is a requirement to assert an FLSA claim and the plaintiff has the burden of proving the relationship exists.  *Childress v. Ozark Delivery of Mo., LLC*, 95 F.Supp.3d 1130, 1138 (E.D. Mo. 2015) (citing 29 U.S.C. § 216(b); *Reich v. ConAgra, Inc.*, 987 F.2d 1357, 1360 (8th Cir. 1993)).  An employer is "any person acting directly or indirectly in the interest of an employer in relation to an employee . . ."  29 U.S.C. § 203(d).  To determine if a party is an employer, courts look to the economic realities of the circumstances of the relationship rather than traditional agency concepts.  *Childress*, 95 F.Supp.3d at 1139 (citing *Goldberg v. Whitaker*, 366 U.S. 28, 33 (1961)).  The "economic realities" test includes the following factors, which are not exhaustive, nor is any one factor dispositive: (1) did the alleged employer possess the power to hire and fire the employee; (2) did the alleged employer supervise and control the employee's work schedule or conditions of employment; (3) did the alleged employer determine the rate and method of payment; (4) did the employer maintain employment records?  *Id.*; *see also Gray v. Powers*, 673 F.3d 352, 355 (5th Cir. 2012).  The main concern is whether the alleged employer possesses direct or indirect power to control "significant aspects" of the employment.  *Childress*, 95 F.Supp.3d at 1139.  "[I]n certain circumstances, an entity can be a joint employer under the FLSA even when it does not hire and fire its joint employees, directly dictate their hours, or pay them."  *Zheng v. Liberty Apparel Co. Inc.*, 355 F.3d 61, 70 (2d Cir. 2003) (citing *Rutherford Food Corp. v. McComb*, 331 U.S. 722 (1947)).

The parties do not dispute TGI and Mr. Shipman were employers of the Stockdalls.[8]  The issue is whether Ms. Shipman is an employer for the purposes of the FLSA.  The facts, as provided to the Court, do not indicate Ms. Shipman was the Stockdalls' employer.  Although Ms. Shipman did terminate the Stockdalls, there is no evidence showing Ms. Shipman had the power to terminate the Stockdalls rather than just being the messenger for Mr. Shipman.  The Stockdalls claim Ms. Shipman determined the conditions of their employment and supervised them.  However, their deposition testimony and the emails produced do not prove this claim.  This evidence shows Ms. Shipman communicated with them on a regular basis regarding hotel operations but it does not indicate whether Ms. Shipman was supervising and directing the Stockdalls herself or simply communicating Mr. Shipman's orders.  As for the third factor, the Stockdalls do not assert Ms. Shipman determined their rate of pay or method of payment.  Lastly, emails between Ms. Stockdall and Ms. Shipman are evidence Ms. Shipman did payroll for the Chateau but this was done on behalf of Mr. Shipman, not for Ms. Shipman's own records.  When analyzing the evidence presented and the factors of the economic realities test, the Court can only conclude Ms. Shipman was not the Stockdalls' employer, as the Stockdalls' have not met their burden to establish the employer-employee relationship.

  C. *Unpaid Overtime*

There is no dispute Mr. and Ms. Stockdall were not paid overtime wages.  The disagreement between the parties is whether Mr. Stockdall is exempted from overtime wages as an executive employee.  The FLSA and MMWL require employees be paid one and one-half times the regular rate at which the employee is regularly paid if the employee works longer than forty hours in a given workweek.  29 U.S.C. § 207(a)(1); Mo. Rev. Stat. § 290.505.  Employees

---

[8] Defendants dispute Ms. Stockdall was an employee but the Court has determined she was an employee *supra*.

employed in a bona fide executive capacity are exempt from minimum wage and overtime requirements.  29 U.S.C. § 213(a)(1); Mo. Rev. Stat. § 290.505.  An employee considered to be in a bona fide executive capacity is one who is compensated at not less than $455.00 per week, his primary duty is management, he directs the work of two or more employees, and he has the authority to hire or fire employees or his opinion gives weight to decisions of hiring and firing of employees.  29 C.F.R. § 541.100.

 Mr. Stockdall cannot be considered to be employed in a bona fide executive capacity because he was not paid more than $455.00 per week.  It is undisputed Mr. Stockdall was paid $700.00 every other week, or eight percent of the hotel's profits for the two weeks.  Only once was Mr. Stockdall paid eight percent of the hotel's profits.  In that pay period, Mr. Stockdall was paid $801.62, which is still below the required $455.00 per week.  Therefore, Mr. Stockdall is not exempted from overtime wages.  Ms. Stockdall is also owed overtime under the same analysis because she was paid nothing for her work at the hotel as an employee; thus, she also cannot be exempt from overtime wages.

 Defendants assert the calculation of Mr. Stockdall's pay must include compensation for board and lodging because the Stockdalls were permitted to live in the hotel.  However, FLSA regulations dictate lodging not be considered in determining how much an employee is paid for the purposes of overtime exemption.  29 C.F.R. § 541.100(a)(1).  Therefore, the Court did not consider the value of the Stockdalls' board and lodging in its determination the Stockdalls must be paid overtime wages.

 The next contention regarding overtime wages is whether Defendants are liable for overtime wages for the time in which the Stockdalls were "on call" for the front desk of the Chateau.  It is undisputed the Stockdalls were required to supervise the front desk of the Chateau

11

at all times during the week with the only exception being when another Chateau employee was paid to work the front desk for approximately twenty-four hours each week.  The Stockdalls were not required to be physically present at the front desk during this entire time; at night, they were allowed to bring the front desk phone into their rooms to handle any problems which might arise with guests.  They received approximately five calls per night from current guests or potential guests.  The Court must determine whether the Stockdalls are entitled to overtime wages for the times when they were "on call."

The Supreme Court has stated an employee's time is work under the FLSA if it is spent "predominantly for the benefit of the employer." *Reimer v. Champion Healthcare Corp.*, 258 F.3d 720, 725 (8th Cir. 2001) (citing *Armour & Co. v. Wantock*, 323 U.S. 126 (1944)).  FLSA regulations state "an employee who is required to remain on call on the employer's premises or so close thereto that he cannot use the time effectively for his own purposes is working while "on call." 29 C.F.R. § 785.17.  Taking into consideration Supreme Court precedent and regulations governing the FLSA, several circuits have developed factors to determine whether on-call time is compensable under the FLSA.  The factors are "(1) whether the employee may carry a beeper or leave home; (2) the frequency of calls and the nature of the employer's demands; (3) the employee's ability to maintain a flexible 'on call' schedule and switch 'on call' shifts; and (4) whether the employee actually engaged in personal activities during 'on call' time." *Whitten v. City of Easley*, 62 Fed. App'x. 477, 479 (4th Cir. 2003) (citing *Kelly v. Hines-Rinaldi Funeral Home, Inc.*, 847 F.2d 147, 148 (4th Cir. 1988)); *Ingram v. Cty of Bucks*, 144 F.3d 265, 268 (3d 1998); *Brigham v. Eugene Water & Elec. Bd.*, 357 F.3d 931, 936 (9th Cir. 2004).

Applying these factors, it is clear the Stockdalls were working while on call for front desk responsibilities.  At least one of the Stockdalls was required to remain on the premises to answer

12

the front desk phone should a current or potential guest need assistance.  The Stockdalls sleep was frequently interrupted, approximately five times each night.  The Stockdalls were required to supervise the front desk for the entirety of the week minus the one twenty-four hour period in which another employee would do so.   These factors indicate the Stockdalls should be compensated for the time in which they were required to supervise the front desk.  Defendants TGI and Mr. Shipman are liable for overtime wages to both Mr. Stockdall and Ms. Stockdall for the time in which they worked in excess of forty hours each week, including the time spent on call for the front desk.

       D.       *Liquidated Damages*

An employer who violates the FLSA is liable to the employee for unpaid wages or overtime and an additional equal amount as liquidated damages.  29 U.S.C. § 216(b).  The Court may determine liquidated damages should not be awarded when an employer proves it acted in good faith and had reasonable grounds for believing its actions were not a violation of FLSA.  29 U.S.C. § 260.  The employer bears the burden of proving he has acted in good faith and had reasonable grounds but the burden is high because single damages are the exception.  *Chao v. BBQ Ventures, LLC*, 547 F.3d 938, 941-42 (8th Cir. 2008).  Good faith means an honest intention to ascertain and follow the dictates of the FLSA.  *Id.* at 942.  The employer must have taken affirmative steps to learn the requirements of the act and the employer's position must be objectionably reasonable.  *Id*.

Defendants assert they should not be responsible for liquidated damages because there are factual disputes as to what Ms. Stockdall should have been paid and what TGI should have known about what Mr. Stockdall was doing.  Defendants also claim TGI was subjected to a wage and hour audit in 2010 with no adverse consequences and Mr. Shipman spoke to the DOL about

13

board and lodging being included to exempt an employee from overtime and was told it was a "gray area" but the DOL would go along with it.

The Court will award liquidated damages to Plaintiffs.  Mr. Shipman knew Ms. Stockdall was working for him.  They communicated regularly about hotel business and Mr. Shipman observed her working when he visited the Chateau.  Defendants' position as to Ms. Stockdall is not objectively reasonable.  Neither is their position in regards to Mr. Stockdall.  FLSA regulations clearly state board and lodging is not to be included in determining whether an employee meets the minimum salary requirements to be exempt from overtime pay.  Mr. Shipman states he spoke to someone in the DOL who told him this was a gray area, but he also admitted in his deposition he has not read any of the laws or guidance provided by the DOL.  Mr. Shipman did not have an honest intention to ascertain and follow the dictates of the FLSA.  The Court will award liquidated damages to Plaintiffs.[9]

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiffs' Motion for Partial Summary Judgment [ECF No. 41] is **GRANTED, in part, and DENIED, in part**.

**IT IS FURTHER ORDERED** that Defendant Tina Shipman's Motion for Summary Judgment on Counts I and II [ECF No. 35] is **GRANTED**.

So Ordered this 22nd Day of December, 2015.

*E. Richard Webber* (signature)

                **E. RICHARD WEBBER**
                **SENIOR UNITED STATES DISTRICT JUDGE**

---

[9] The Court is not determining the amount of damages, as that is the province of the jury and the parties have not submitted undisputed facts for damages to be determined at summary judgment.